No. 2573.—EMILE L. BREAUX *v.* THE PARISH OF IBERVILLE.

The police jury of a parish have no authority, growing out of their general powers, to enter upon schemes of finance by executing and putting upon the market bonds or notes of the parish they represent, for the purpose of raising money for any purpose whatever. Therefore the holders of bonds or notes of the parish which have been executed by the authority of the police jury, or notes signed by the president and treasurer of the police jury, who themselves had no authority from the Legislature to make such bonds or notes, can not enforce their payment against the parish. Such bonds or notes, having been given or authorized by the police jury without any authority of law, are null and void and of no binding force or effect against the parish.

APPEAL from Fifth Judicial District, parish of Iberville. *Posey, J.*. *Barrow & Pope*, for plaintiff and appellee. *Zenon Lebauve*, for defendant and appellant.

TALIAFERRO, J. There is a motion to dismiss the appeal taken in this case on the grounds:

*First*—That it does not appear that the judgment appealed from has ever been entered upon the minutes of the court.

*Second*—That the defendant did not before appealing exhaust all his remedies by law in the lower court, not having moved for a new trial.

*Third*—There is no order granting an appeal.

The third ground stated is the only one we deem it necessary to examine. We find by the minutes of the court, under date of twenty-third of September, 1869, an order in the usual form, reciting that "on motion of counsel for defendant it is ordered that an appeal be

granted," etc. It appears that the signature of the appellant's counsel is affixed below the order. This has no effect whatever upon the order, which must be taken as the act of the court. We think the objection has no force, and therefore overrule the motion to dismiss.

The parish of Iberville, through its police jury, is sued on a promissory note for $1518 20, with eight per cent. interest from the ninth of January, 1867. The instrument sued upon is in these words:

"$1518 20. Iberville, May 15, 1866. The parish of Iberville will pay fifteen hundred and eighteen dollars 20-100 to the bearer on the ninth day of January, 1869, at the office of the recorder of the parish of Iberville, with interest thereon at eight per cent. per annum from maturity until paid

| | |
|---|---|
| (Signed) | A. DUPUY, Treasurer. |
| (Signed) | J. A. DARDENNE, President. |

Indorsed—Presented and registered January 9, 1866.

(Signed)                        A. DUPUY, Treasurer."

The defense is that the instrument sued on was issued without warrant or authority of law, and is null for that reason and for the further reason that it was issued in renewal of an original obligation which was executed for the payment of the price of slaves; that upon the issuing of the instrument the police jury made no provision for the payment of it as required by law; and, lastly, that the individuals, composing the police jury at the date of the obligation, were not legally members of that body, and their acts on that account are null.

Judgment in the court below was given in favor of the plaintiff, and the defendant has taken this appeal.

It appears from the record that in 1859 the police jury of the parish of Iberville, for the purpose of constructing a work of considerable magnitude and of great public importance to the people of the parish, that of a levee to protect a part of the interior portion of the parish from overflow and to serve also as a public road to facilitate intercommunication, appropriated $25,000 by ordinance passed on the twelfth of April, 1859, to which was added by another ordinance, passed on the sixth of June following, the sum of $10,000. This aggregate of $35,000 was directed to be invested in slaves, to be purchased for the parish to perform the labor. Slaves were accordingly purchased in September of the same year by commissioners appointed for that purpose. It seems that $30,450 in cash were expended in the purchase of a number of slaves, and that parish bonds had been issued and sold to raise the money. In January, 1866, on the application of the holders of these bonds, the police jury of the parish renewed them by a new issue of obligations, of which the promissory note on which suit is brought in this case, is one.

A bill of exceptions was taken by the defendant to the ruling of the

court, by which it ordered upon the plaintiff's motion, after the defendant's counsel had closed his evidence, two documents introduced by the latter, viz:

*First*—The ordinance of the police jury appropriating ten thousand dollars additional to the appropriation of January, 1859, and directing the purchase of slaves with bonds of the parish to be issued for that purpose.

*Second*—The act of sale of the slaves by Gilberth to the parish of Iberville. The objection to this evidence of the defendant is based on the claim of the plaintiff that he is the *bona fide* holder of the negotiable instrument sued upon for value before maturity and without notice of equities or defects in the instrument.

We think the court erred. These acts, it seems, were received without objection; they appertain to the whole transaction and should not have been excluded. 12 An. 12; 13 An. 445. The article 128 of the State Constitution and the construction given to it in a late decision of this court establish that notes executed for the price of slaves form an exception to the rule invoked by the plaintiff; the constitutional provision limiting in that respect the commercial law. See case of Groves *v.* Clark et al., 21 An. 567.

Police juries are corporations whose powers are limited and clearly defined by the Legislature. We think it well established that whenever the interests and wants of a parish require local legislation, which the police jury is not clearly empowered to establish, a delegation of the power to adopt such legislation must first be obtained. Such has been the usage especially in regard to the issuing and selling bonds. Frequent instances of this usage occur. The act of 1852, numbered 177, authorizes the police jury of the parish of Jefferson to issue and sell bonds to construct two shell roads. Act No. 185 of acts of 1854 authorizes the police jury of Pointe Coupée to issue bonds to pay debts. Acts of 1869, No. 35, authorizes the police jury of St. James to issue bonds to build a court house and jail and to pay debts. Acts of 1869, No. 49, authorizes the city of New Orleans to issue bonds. Other instances might be cited where powers have been delegated to those bodies to perform other acts which they are incompetent to do under their general powers. The powers of these corporations must be construed strictly. The issuing and putting into circulation of bonds or other instruments, creating obligations against a parish, are the exercise of an important, not to say a dangerous, power and one certainly not given to police juries by the general law organizing those bodies. For parochial purposes they are authorized to levy taxes, and they are prohibited (Revised Statutes, p. 411, sec. 23) from contracting debt or pecuniary liability without fully providing in the ordinance creating the debt the means of paying principal and interest.

In the case we are considering, it is shown that the works contemplated were of great public utility, and that the people of Iberville desired them to be completed. These reasons, however strong, do not justify a disregard of law in the proceedings to accomplish the object desired. It is not important in this case to inquire into the legality of the several ordinances passed on this subject, so far as that legality is questioned on the ground that the means for discharging the indebtedness were not provided in the ordinance making the appropriation.

We are inclined to think that the common construction heretofore given to the powers of police juries in regard to their issuing bonds or obligations of the sort in question, and which ignores the existence of such a right, is the correct one. We can find no warrant for the exercise of such power under any of the enumerated powers granted to those bodies by statute. Having the power granted to levy a tax to defray the cost of any such public works as they are authorized to do, there is no need of resorting to other means under the pretense of exercising implied powers. Under the general powers granted, and they are express, specific and well defined, they seem clearly without right to adopt schemes of finance and make investments of parochial funds, as the police jury of Iberville has done in this case. For these reasons we think their proceedings null. Entertaining these views in regard to the issue of the bonds, it becomes unnecessary to examine the other grounds of defense.

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed. It is further ordered that judgment be rendered in favor of the defendant, the plaintiff and appellee paying costs in both courts.

## ON APPLICATION FOR REHEARING.

HOWE, J. An application for rehearing has been made in this case, supported by an elaborate brief. We apprehend that the point in dispute can be settled by a reference to the articles of the Civil Code in relation to political corporations and the construction given by this court to those articles.

This is not an action for work done or supplies furnished to the parish of Iberville, of the value of which the note in suit is merely sought to be used as evidence. It is an action on a promissory note made by J. A. Dardenne, President of Police Jury, and A. Dupuy, Treasurer, and it is claimed by plaintiff that the parish is bound by these signatures of its official agents. The defendant denies the authority of these its agents to make for it a promissory note.

Article 420 of the Civil Code, 1825, declares that political corporations are those which have principally for their object the administration of a portion of the State, and to whom a part of the powers of government is delegated to that effect.

Article 429 recognizes the fact that a corporation can act only through agents, "under the name of mayor, president, syndics, directors or others, according to the statutes and qualities of such corporation."

Article 430 declares that these attorneys in fact or officers, "by contracting, bind the corporations to which they belong in such things as do not exceed the limits of the administration which is intrusted to them; their act is supposed to be the act of the corporation;" and "if the powers of such attorneys or officers have not been expressly determined, they are regulated in the same manner as those of other agents."

Article 2966 declares that the power of an agent to draw a promissory note must be express and special. Such express and special power could only be conferred on a police jury or its officers by statute, and no such statute exists in this case.

It seems clear then that the officers who signed the note in suit had no legal authority to bind the parish in that form. Such was the doctrine recognized by this court in Louisiana State Bank v. Orleans Navigation Company, 3 An. 294, in which the validity of an indorsement and guaranty of bonds or notes by the First Municipality of New Orleans was drawn in question. And this rule is not merely technical. It is in harmony with the spirit of the Roman law in regard to communities, the articles of our code above cited having been imported with little change from that system of jurisprudence. Domat., part 1, lib. 2, tit. 3. It is in harmony also with the jurisprudence of the United States, as settled by the highest authority. Mr. Kent says, vol. 2, p. 298: "The modern doctrine is to consider corporations as having such powers as are specifically granted by the act of incorporation or as are necessary for the purpose of carrying into effect the powers especially granted, and as not having any other. The Supreme Court of the United States declared this obvious doctrine, and it has been repeated in the decisions of the State courts. 2 Cranch 167; 4 Wheaton 636; 4 Peters 163; 13 Peters 587; 14 Peters 122; 12 Wheaton 68."

Rehearing refused.